UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| EDUARDO GARCIA SILVA,<br><br>                      Petitioner,<br><br>v.<br><br>CHRISTOPHER J. LAROSE, Senior Warden, Otay Mesa Detention Center, San Diego, California; PATRICK DIVVER, Field Office Director, San Diego Office of Detention and Removal, U.S. Immigrations and Customs Enforcement; U.S. Department of Homeland Security; TODD M. LYONS, Acting Director, Immigration and Customs Enforcement, U.S. Department of Homeland Security; SIRCE OWEN, Acting Director for Executive Office for Immigration Review; KRISTI NOEM, Secretary, U.S. Department of Homeland Security; PAM BONDI, Attorney General of the United States;<br><br>                      Respondents. | Case No.: 25-cv-2329-JES-KSC<br><br>**ORDER:**<br><br>**(1) GRANTING PETITION FOR HABEAS CORPUS PURSUANT TO 28 U.S.C. § 2241; AND**<br><br>**(2) ORDERING JOINT STATUS UPDATE**<br><br>**[ECF NO .1]** |

//

//

//

1

Before the Court is a Petition for Habeas Corpus ("Petition" or "Pet.") pursuant to 28 U.S.C. § 2241. ECF No. 1. Petitioner Eduardo Garcia Silva ("Petitioner") filed a Petition in which he asserts that he has been illegally detained by the U.S. Department of Homeland Security ("DHS") after an Immigration Judge ("IJ") ordered his release pursuant to a $2,000.00 bond. For the reasons set forth below, the Court **GRANTS** the Petition for Writ of Habeas Corpus.

## I. BACKGROUND

### A. Factual Background

Petitioner is a 31-year-old native and citizen of Mexico who resides in San Diego, California. Pet. ¶ 40. He has no criminal record nor previous contact with immigration authorities. *Id.* At the age of seven, Petitioner and his family members fled to the United States after his father was killed in Mexico. *Id.* ¶¶ 40-41. Since then, Petitioner has never departed the United States and has not been a party to any previous immigration proceedings. *Id.* ¶ 41. Petitioner, a high school GED diploma holder, previously attempted to apply for DACA but was prevented from doing so due to court orders prohibiting DHS from accepting new applications. *Id.* On June 11, 2025, Petitioner was arrested and placed in removal proceedings after being pulled over by DHS agents when he was driving on the freeway. *Id.* ¶ 42.

On July 18, 2025, Petitioner requested a custody redetermination hearing pursuant to 8 C.F.R. § 1236. ECF No. 8-1 at 11. The IJ accepted jurisdiction and found that Petitioner demonstrated that he neither poses a danger to the community nor a significant flight risk such that he could not be released after payment of a bond and with the imposition of other mitigating conditions. *Id.* Accordingly, the IJ granted the Petitioner's request, allowing his release upon payment of a $2,000 bond. *Id.* That same day, DHS filed its Form EOIR-43, which appeals the IJ's order and triggers an automatic stay of the bond decision for 90 days pending the Board of Immigration Appeals' ("BIA") review of the appeal, resulting in the continued detention of Petitioner to date. *See* 8 C.F.R. § 1003.19(i)(2); *id.* at 15; ECF No. 8-1 at 14.

### B. Procedural Background

On September 7, 2025, Petitioner filed a Petition for Writ of Habeas Corpus pursuant to 28 U.S.C. § 2241. The case was then transferred to this Court on September 8, 2025. ECF No. 2. On September 10, 2025, the Court directed service on the Respondents, with their response due within thirty days. ECF No. 3. Upon further review of the Petition, on September 17, 2025, the Court vacated its September 10, 2025 Order (ECF No. 3) and modified the briefing schedule, requiring Respondents to respond no later than September 22, 2025. ECF No. 4. Respondents filed their answer to the Petition on September 22, 2025. ECF No. 8 ("Res."). On September 23, 2025, Petitioner filed, and the Court Granted, an Ex Parte Motion for Leave to File a Traverse in Support of the Petition. ECF Nos. 10-11. Petitioner filed his Traverse on that same day. ECF No. 13 ("Trav."). On September 24, 2025, the Court held a hearing on the Petition and heard oral argument from the Parties. ECF No. 15.

## II.  LEGAL STANDARD

A writ of habeas corpus is "available to every individual detained within the United States." *Hamdi v. Rumsfeld*, 542 U.S. 507, 525 (2004) (citing U.S. Const., Art I, § 9, cl. 2). "The essence of habeas corpus is an attack by a person in custody upon the legality of that custody, and ... the traditional function of the writ is to secure release from illegal custody." *Preiser v. Rodriguez*, 411 U.S. 475, 484 (1973). A court may grant a writ of habeas corpus to a petitioner who demonstrates to be in custody in violation of the Constitution or federal law. 28 U.S.C. § 2241(c)(3). Traditionally, "the writ of habeas corpus has served as a means of reviewing the legality of Executive detention, and it is in that context that its protections have been strongest." *I.N.S. v. St. Cyr*, 533 U.S. 289, 301 (2001). Accordingly, challenges to immigration-related detention are within the purview of a district court's habeas jurisdiction. *Zadvydas v. Davis*, 533 U.S. 678, 687 (2001); *see also Demore v. Kim*, 538 U.S. 510, 517 (2003).

Habeas corpus is "perhaps the most important writ known to the constitutional law ... affording as it does a swift and imperative remedy in all cases of illegal restraint or

confinement." *Fay v. Noia*, 372 U.S. 391, 400 (1963). "The application for the writ usurps the attention and displaces the calendar of the judge or justice who entertains it and receives prompt action from him within the four corners of the application." *Yong v. I.N.S.*, 208 F.3d 1116, 1120 (9th Cir. 2000) (citation omitted).

## III.  DISCUSSION

### A. Jurisdiction

Notwithstanding the principles set forth above, the threshold question for the Court is whether it has jurisdiction to hear Petitioner's claims as Respondents argue that the Court lacks jurisdiction for two reasons.

First, Respondents argue that 8 U.S.C. § 1252(g) strips this court of "jurisdiction over any claim or cause of action arising from any decision to commence or adjudicate removal proceedings or execute removal orders." Res. at 11. However, Petitioner does not seek relief from this Court from a decision to execute a removal order. Rather, he is challenging Respondents' denial of his release from immigration custody, pursuant to DHS's automatic stay policy. Pet. at 18; Trav. at 3. Therefore, this argument has no bearing on this Petition.

Second, Respondents argue that 8 U.S.C. §§ 1252(a)(5) & (b)(9) "divest district courts of jurisdiction to review both direct and indirect challenges to removal orders, including decisions to detain for purposes of removal or for proceedings." Res. at 14. They contend further that "Petitioner challenges the government's decision and action to detain him, which arises from DHS's decision to commence removal proceedings, and is thus an action taken . . . to remove [him] from the United States." *Id.* (internal quotations omitted).

8 U.S.C. § 1252 (b)(9) directs that "[j]udicial review of all questions of law and fact...arising from any action taken or proceeding brought to remove an alien from the United States...shall be available only in judicial review of a final order." 8 U.S.C. § 1252(a)(5) reserves such "judicial review of *an order of removal*" for the courts of appeals (emphasis added). Following a plain language analysis of the implicated statutes, the Court finds that that this provision means that only judicial review of final orders of removal is

reserved to the courts of appeals, not every order issued in a removal proceeding. This finding is in line with a recent Supreme Court decision where it held that an IJ's Convention Against Torture determination was not a final order of removal and that judicial review of that decision is not governed by § 1252(b)(9). *Nasrallah v. Barr*, 590 U.S. 573, 581–83 (2020); *see also Riley v. Bondi*, 606 U.S. ___, Part IIA2 (2025) (discussing *Nasrallah*). The IJ's decision to grant Petitioner bond, here, is not a final order of removal. Thus, § 1252(b)(9) nor § 1252(a)(5) bars its review by the district court. Accordingly, the Court has jurisdiction to hear this petition.

### B. Mandatory or Discretionary Detention

Petitioner alleges that DHS's characterization of him as an "applicant for admission" pursuant to 8 U.S.C. § 1225(a), thus subjecting him to mandatory detention under § 1225(b)(2), violates the Immigration and Nationality Act, the Administrative Procedure Act, and the Due Process Clause of the Fifth Amendment. Petitioner also claims that DHS's invocation of 8 C.F.R. § 1003.19's automatic stay provision, after an IJ ordered his release on bond, violates his procedural due process rights. *Id*. § 1003.19(i)(2).

Respondents argue that Petitioner's confinement is statutorily authorized by 8 U.S.C. § 1225(b)(2). Res. at 11. Which, they maintain, requires detention throughout the Petitioner's entire removal proceedings. *Id.* Further, that the BIA's decision in *Matter of Yajure Hurtado*, 29 I & N Dec. 216 (B.I.A. 2025) makes it likely that the IJ's order to release Petitioner will be reversed. *Id.* at 14.

The Court understands and acknowledges that outcome may very well occur. However, whether § 1225(b)(2) or § 1226(a) applies to Petitioner was the issue before the immigration court. Pet. ¶ 5. There, the IJ found that § 1226(a) applied to Petitioner and ordered his release, on bond. *Id.* Therefore, Petitioner is detained only through use of the automatic stay regulation based on the IJ's finding. The applicability of § 1225(b)(2), as applied to Petitioner, is not before the Court. Rather, the presented issue is whether § 1003.19(i)(2) provides Respondents with the authority to unilaterally detain Petitioner after

a duly appointed Immigration Judge has granted his release, pursuant to a bond. Specifically, whether the automatic stay regulation violates Petitioner's due process rights.

*See Herrera v. Knight*, No. 2:25-cv-01366-RFB-DJA, 2025 WL 2581792, at *7 (D. Nev. Sept. 5, 2025); *Arce v. Trump*, No. 8:25CV520, 2025 WL 2675934, at *4 (D. Neb. Sept. 18, 2025).

Accordingly, the Court turns to Petitioner's procedural due process claim.

**C. Procedural Due Process**

Respondents undertook two separate acts of detaining the Petitioner, both of which require valid authority and due process. The initial detention of Petitioner was authorized pursuant to the Border Patrol's authority to detain individuals based upon its determination that they are not lawfully in the United States. *See* 8 U.S.C. §§ 1226, 1225, 1229(a); Res. at 6. However, once Petitioner was detained, he invoked his right, under 8 C.F.R. § 1003.19(e), to seek a custody redetermination. Pet. ¶ 43. Petitioner secured his release based upon an IJ's finding that § 1226(a) applied to Petitioner and set bond conditions. *Id.* Prior to his release, DHS effected a second detention by invoking the automatic stay under 8 C.F.R. § 1003.19(i)(2). ECF No. 8-1 at 14, 16-19.

Respondents fail to address that there are two separate acts of detention and instead, contend that § 1225 provides proper authority to detain the Petitioner. Res. at 19. Moreover, Respondents argue that the automatic stay provision is not a detention statute, it is merely a means to challenge the IJ's decision. *Id.* Further, invocation of the automatic stay provision, thereby compelling Petitioner's detention until the appeal of the bond decision is heard, does not change the constitutionality of the detention because such invocation is in support of the statutory scheme implemented by Congress. *Id.*

The Court finds that the invocation of the automatic stay, itself, is a separate act of detention that must also satisfy due process. The Court, therefore, conducts its procedural due process analysis of the automatic stay pursuant to 8 C.F.R. § 1003.19(i)(2) under *Mathews v. Eldridge*, 424 U.S. 319, 335 (1976).

//

### 1. The Private Interest

The first *Mathews* factor considers the private interest affected by DHS's invocation of the automatic stay. *Id*. "The interest in being free from physical detention" is "the most elemental of liberty interests." *Hamdi*, 542 U.S. at 529: *see United States v. Salerno*, 481 U.S. 739, 755 (1987) ("In our society liberty is the norm, and detention ... is the carefully limited exception."); *see also Rodriguez Diaz v. Garland*, 53 F.4th 1189, 1207 (2022) ("An individual's private interest in freedom from prolonged detention is unquestionably substantial.") (citations omitted).

Here, Petitioner is claiming a significant private interest in being free from the physical detention, circumstances for which the IJ found him suitable for. *See Zadvydas*, 533 U.S. at 690 (explaining that an individual's interest in being free from detention "lies at the heart of the liberty that [the Due Process] Clause protects"). Petitioner is experiencing all the deprivations that come with physical detention, including, but not limited to, separation from his family and lack of privacy.

Under the automatic stay regulation, Petitioner is also likely to face a lengthy detention. When DHS filed its notice of appeal, the next phase of Petitioner's detention began. ECF No. 8-1 at 14. This detention will last for at least ninety days, pending BIA's decision. *See* 8 C.F.R. §§ 1003.19(i)(2), 1003.6(c)(4). If the BIA fails to resolve the appeal within the ninety-day period, DHS may move for "a discretionary stay," which results in a thirty-day extension of the stay. *See id*. §§ 1003.19(i)(2), 1003.6(c)(5).

If the BIA authorizes release, denies the motion for a discretionary stay, or fails to act on such a motion before the automatic stay period expires, the noncitizen's release is automatically stayed for five business days. *See id*. § 1003.6(d). However, during that period, the Secretary of Homeland Security, or another designated official, may refer the case to the Attorney General. *See* 8 C.F.R. § 1003.1(h)(1). Such a referral results in an additional fifteen business day stay of the noncitizen's release and also allows the Attorney General to extend the stay *indefinitely* by ordering a discretionary stay pending disposition of the case. *Id*.; *Id*. §1003.6(d). Therefore, under the automatic stay regulation, Petitioner's

detention could very well span months, or even years, despite his significant interest in freedom from physical confinement. Accordingly, the first *Mathews* factor heavily supports Petitioner's claim of a procedural due process violation.

### 2. The Risk of Erroneous Deprivation

The second *Mathews* factor is "the risk of an erroneous deprivation of [Petitioner's] interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards." *Mathews*, 424 U.S. at 335. The risk of erroneous deprivation of a noncitizen's, such as Petitioner, liberty interest when DHS invokes the automatic stay is substantial for two reasons.

First, the regulation's terms provide no identifiable standard to serve as a framework for any purported due process procedures. *See* 8 C.F.R. § 1003.19(i)(2). The regulation merely states that it may be invoked "[i]n any case in which DHS has determined that an alien should not be released or has set a bond of $10,000 or more." *Id*. Such language provides an undefined and subjective standard, which therefore, creates the likelihood of arbitrary and capricious application. Thus, the Court finds that DHS' unchecked power to prolong an individual's detention, cannot possibly be construed as a "carefully limited exception" to one's right to liberty as required by the Due Process Clause. *See* Salerno, 481 U.S. at 755.

Second, the automatic stay regulation adversely affects only "those detainees who have already prevailed in a judicial hearing." *Günaydin v. Trump*, 784 F.Supp.3d 1175, 1187 (D. Minn., 2025). That is because agency officials may only invoke the provision *after* they have lost before an IJ. Therefore, the challenged regulation empowers an agency official, a participant in the adversarial process, to unilaterally override an IJ's decision. "Such a rule is anomalous in our legal system[.]" *Id*.; *see also Sampiao v. Hyde*, No. 1:25-cv-11981, 2025 WL 2607924, at *10 (D. Mass. Sept. 9, 2025) (noting that the automatic stay provision "allows the government to bypass its burden of proof at bond hearings and usurp the role of the Immigration Judge."). "Further, this unilateral stay stands in contrast to the ordinary requirements of overriding a judge's order pending appeal, which requires

a showing of, *inter alia*, a likeliness of success on the merits of the appeal and irreparable injury in the absence of a stay." *Herrera*, 2025 WL 2581792, at *11 (citing *Nken v. Holder*, 556 U.S. 418, 426 (2009)).

Accordingly, the Court finds the automatic stay provision creates a substantial risk of erroneous and arbitrary confinement. *See Günaydin*, 784 F.Supp.3d at 1181 (concluding § 1003.19(i)(2) creates a substantial risk of erroneous deprivation of a detainee's interest in being free from arbitrary confinement); *see also Herrera*, 2025 WL 2581792, at *10; *Hasan v. Crawford*, No. 1:25-CV-1408, 2025 WL 2682255, at *12 (E.D. Va. Sept. 19, 2025).

When considering the degree to which additional or substitute procedural safeguards could ameliorate the risks of erroneous deprivation, the Court finds *Günaydin* instructive. The *Günaydin* court found that the automatic stay "regulation itself includes an obvious alternative." 784 F.Supp.3d at 1189. The procedure set forth in 8 C.F.R. § 1003.19(i)(1) allows DHS to request a discretionary stay from the BIA "at any time" "(whether or not on an emergency basis)." *Id*. The Court agrees that this procedure would significantly reduce the risk of erroneous deprivation without imposing significant burdens on the government. *Id*.

Accordingly, the Court finds that the second *Mathews* factor supports Petitioner's claim that the automatic stay provision violates the Due Process Clause.

### 3. The Government's Interest and Burden of Additional Process

Finally, the third *Mathews* factor considers, the "Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail." 424 U.S. at 335.

Respondents make no argument regarding the *Mathews* test and defend the constitutionality of the automatic stay provision on the basis that it is supportive of the statutory scheme implemented by Congress. Res. at 19. At the hearing, Respondents contended that their interest here is keeping those who are unlawfully present, but never sought admission, detained pending removal.

Separate and apart from Respondents' arguments, the Court reasons that the government has a legitimate interest in ensuring Petitioner's appearance at removal proceedings and mitigating the risk of harm to the community. *Zadvydas,* 533 U.S. at 690. However, the IJ found that the Petitioner did not pose such risks here. ECF No. 8-1 at 11. Respondents did not dispute the IJ's findings at the hearing. Nor did they suggest that implementing the IJ's bond order pending the BIA's review or pursuing the alternative procedural requirement, seeking a discretionary stay from the BIA, would impose burdensome administrative or financial costs. *See* 8 C.F.R. § 1003.19(i)(1).

Therefore, the Court finds that the third *Mathews* factor supports Petitioner's claim that the automatic stay provision violates the Due Process Clause.

Each of the three *Mathews* factors favor the Petitioner. Therefore, the Court concludes that, under these circumstances and as applied to him, the Petitioner's detention under the automatic stay regulation violates his procedural due process rights.

## IV. CONCLUSION

Based on the foregoing: (1) Petitioner's Writ of Habeas Corpus is **GRANTED**; (2) Respondents are **ORDERED** to immediately release the Petitioner upon his posting of the ordered bond, with no additional conditions beyond those imposed by the Immigration Judge at the bond redetermination hearing; and (3) the Parties are **ORDERED** to file a Joint Status Report no later than 5:00 p.m. on September 30, 2025, confirming that the Petitioner has been released, assuming all bond conditions have been met

**IT IS SO ORDERED.**

Dated: September 29, 2025

Honorable James E. Simmons Jr.
United States District Judge